**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

| | |
|---|---|
| REBECCA HIGDON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GERBER LIFE INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | Case No. 3:26-cv-05316-JHC<br><br>**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR:**<br>**June 25, 2026**<br>**Oral Argument Requested** |

## I. INTRODUCTION

Plaintiff Rebecca Higdon ("Plaintiff") brings claims against Defendant Gerber Life Insurance Company ("Gerber Life")—an insurance carrier—for alleged federal and state telemarketing violations committed by unidentified third-party marketers who promoted various insurance products, including Gerber Life products. Plaintiff pleads no facts that plausibly suggest Gerber Life directed, authorized, or controlled any of the challenged telemarketing conduct. Nevertheless, she asserts that Gerber Life violated the Do-Not-Call provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., and Washington state law by purportedly initiating telemarketing calls to her personal cell phone, which she registered on the National Do Not Call Registry ("NDNCR"), and by allegedly placing calls using "fake" or "spoofed" telephone numbers.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Plaintiff alleges she received "no fewer than fifty" telemarketing calls made by or on behalf of Gerber Life. Yet the Complaint identifies only a "non-exhaustive list" of twenty calls allegedly received in 2025 and 2026. According to Plaintiff, each call displayed a different caller identification number and was placed by individuals who identified themselves as calling from "Senior Care," "Senior Benefits," "Senior Benefit Solutions," or "American Benefits." Plaintiff does not identify a single caller as being affiliated with Gerber Life. She identifies only four calls in which the caller allegedly referenced Gerber Life insurance products. And despite claiming to be annoyed by these calls, Plaintiff applied for—and was issued—two Gerber Life insurance policies, paying premiums on one of them before filing suit.

For a call to fall within the scope of the TCPA or Washington's telemarketing statutes, it must be made directly by the defendant or by a third party acting as the defendant's agent. Plaintiff alleges neither.

As to direct liability, the Complaint contains no facts plausibly suggesting that Gerber Life itself initiated any of the challenged calls. Plaintiff concedes that none of the callers stated they were representatives of Gerber Life. Instead, the callers identified themselves as working for other companies and selling life-insurance products generally. On these allegations, the Court cannot reasonably infer that Gerber Life directly placed any telemarketing calls to Plaintiff.

As to vicarious liability, the Complaint likewise fails to allege facts supporting any theory of agency. Plaintiff does not claim that Gerber Life directed, controlled, supervised, or even communicated with the callers. She alleges only that the callers promoted Gerber Life products and that she ultimately purchased a Gerber Life policy. Courts have held that a caller's promotion of an insurer's products—without more—is insufficient to establish vicarious liability under the TCPA. Courts have likewise rejected the notion that the mere receipt of a benefit, such as policy premiums, can create an agency relationship. Absent factual allegations


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

showing that Gerber Life controlled or directed the callers' telemarketing practices, Plaintiff cannot state a claim for vicarious liability.

Accordingly, and as set forth more fully in this Memorandum of Law, Gerber Life respectfully requests this Court to dismiss Plaintiff's Complaint in its entirety for failure to state a claim against Gerber Life.

## II. Factual Background and Procedural History[1]

On March 2, 2026, Plaintiff filed a putative class action complaint against Gerber Life in the Superior Court of the State of Washington, Clark County. Dkt. 1-1. Gerber Life timely removed the action to this Court on March 31, 2026. Dkt. 1. Plaintiff filed her First Amended Complaint (the "Complaint") on April 15, 2026. Dkt. 11. By Order dated May 19, 2026, the Court approved the parties' stipulation setting May 28, 2026 as the deadline for Gerber Life to respond to the complaint. Dkt. 18.

Plaintiff alleges Gerber Life violated the Do-Not-Call provisions of the TCPA, 47 U.S.C. § 227(c), and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d), as well as Washington state law, by placing calls that purportedly "encourage[d] [Plaintiff] to purchase final expense goods and services" from Gerber Life despite her cellphone's registration on the National Do Not Call Registry ("NDNCR"). Dkt. 11 ¶¶ 22, 44.

Plaintiff alleges she received telemarketing calls made by or on behalf of Gerber Life on "no fewer than fifty (50) occasions" in purported violation of the TCPA. *Id.* ¶ 83. Plaintiff includes a chart with a "non-exhaustive list" of twenty telemarketing calls Plaintiff allegedly received in 2025 and 2026. *Id.* ¶¶ 34, 36. Of the twenty calls listed in the chart, Plaintiff alleges

---

[1] For purposes of this Motion only, Gerber Life assumes the truth of the facts alleged in the Complaint. Gerber Life does not concede the truth of any of Plaintiff's allegations or waive any other defenses or rights in this case.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

five of the calls were "robocalls" which Plaintiff describes as "prerecorded or artificial voice" calls. *Id.* ¶¶ 36–38. Plaintiff characterizes the balance of calls as "voice" calls. *Id.* ¶ 37. Plaintiff also alleges fifteen of the calls were "spoofed" calls, which, according to Plaintiff, are calls with a "fake" caller identification number. *Id.* ¶ 40.

While Plaintiff includes in her Complaint the conclusion that the calls in the chart were "from Gerber [Life], or an agent acting on behalf of Gerber [Life], selling Gerber [Life]'s goods and services," Plaintiff identifies just four calls in which the caller allegedly mentioned Gerber Life. *Id.* ¶¶ 34, 36(8), 36(14), 36(19) and 36(20).

Plaintiff alleges on December 11, 2025, she received a call during which she admittedly purchased a Gerber Life insurance policy (with policy number ending 2341) and provided payment information for the policy premiums. *Id.* ¶ 36(8). Plaintiff claims that four days later, on December 15, 2025, she "used a reasonable means to tell Gerber [Life] about the unwanted calls . . . and asked for [the calls] to stop." *Id.* Plaintiff provides no detail regarding how or to whom this request was made or what "reasonable means" she used to make the request.

Plaintiff alleges on January 8, 2026, she received a call from a company called "American Benefits" during which the caller purportedly stated, "I have a company for you with the name of Gerber Life." *Id.* ¶ 36(14).

Plaintiff alleges on February 2, 2026, she received a call during which she admittedly purchased another Gerber Life insurance policy (with policy number ending 9598). *Id.* ¶ 36(19). Plaintiff claims that two days later she "use[d] a reasonable means to tell Gerber [Life] about the unwanted calls . . . and made another DNC request." *Id.* Once again, Plaintiff provides no detail regarding how or to whom this request was made or what "reasonable means" she used to make the request.


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Finally, Plaintiff alleges on March 4, 2026, she received a call from a company called "Senior Financial Solutions" during which the caller purportedly offered "a $10,000 Gerber [L]ife insurance policy for $59 a month." *Id.* ¶ 36(20).

Plaintiff contends she did not "consent to any solicitations calls [sic] from Gerber [Life] or its agents" or "consent to any calls from Gerber [Life] or its agents that contained artificial or pre-recorded voice." *Id.* ¶¶ 25–26. She attributes all calls in the chart to Gerber Life and alleges that "[t]hese call[s] are all from the same telemarketer." *Id.* ¶ 29. But each call was received from a different telephone number, and the callers identified themselves as affiliated with a variety of different companies. *Id.* ¶¶ 28, 36. Plaintiff also alleges that each call was "initiated to encourage . . . Plaintiff to purchase goods and/or services from Gerber." *Id.* ¶ 72. Yet her own allegations show that Gerber Life was mentioned in only four of the twenty calls. Plaintiff further alleges she repeatedly asked "Gerber [Life] and Gerber [Life]'s agents to stop calling her," *id.* ¶ 108, but identifies only two such requests and provides no detail from which the Court could infer whether any request was ever communicated to Gerber Life. *Id.* ¶ 36.

At most, Plaintiff's factual allegations amount to the following: (1) she received calls from unidentified callers using various names who pitched life-insurance products; (2) only four callers mentioned Gerber Life; (3) Plaintiff purchased two Gerber Life policies from two of the callers; and (4) Gerber Life accepted premiums for at least one of those policies.

Plaintiff's thirteen-count Complaint asserts violations of: (i) the Do-Not-Call provisions of the TCPA and its implementing regulations (Counts 1–6); (ii) the Washington Automatic Dialing & Announcing Device Act ("WADADA"), RCW 80.36.400(2) (Count 7); (iii) the Washington Commercial Telephone Solicitation Act ("WCTSA"), RCW 80.36.390 et seq. (Counts 8–11); and (iv) the Washington Consumer Protection Act ("WCPA"), RCW 19.86 et


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

seq. (Count 12). Plaintiff also seeks injunctive relief enjoining future violations of each statute (Count 13).

Plaintiff proposes eleven classes, including nationwide classes for her TCPA claims and Washington classes for her state-law claims. *Id.* ¶ 55. She seeks statutory damages of $1,500 per alleged TCPA violation and $1,000 per alleged violation of the WTSA and WCPA, as well as treble damages for her TCPA and WCPA claims and attorneys' fees for her WCTSA and WCPA claims. *Id.* ¶¶ 181–89.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." For purposes of the motion, a court accepts material allegations of fact as true; however, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (citations & quotations omitted). This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Further, under Rule 12(b)(6), "[t]he Court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party." *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011). But it need not do so for allegations "'that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1144 n.4 (9th Cir. 2012) (quoting *Sprewell v. Golden State Warrior*s, 266 F.3d 979, 988 (9th Cir. 2001)); *nexTUNE, Inc. v. McKinney*, No. C12–1974 TSZ, 2013 WL 2403243, at *4 (W.D. Wash. May 31, 2013)



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

("[S]peculation unsupported by any factual allegation is insufficient to survive a motion to dismiss under FRCP 12(b)(6).").

## IV. Legal Argument

### A. **Plaintiff Fails to Plead Facts Supporting a Viable Theory of Liability**

There are only two potential theories of liability under the TCPA: direct and vicarious liability. *See USAnovic v. Americana, LLC*, 775 F. Supp. 3d 1133, 1139 (D. Nev. 2025) (citing *Thomas v. Taco Bell Corp.*, 582 F. App'x. 678, 679 (9th Cir. 2014)). As courts have explained, "[f]or a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, No. 19-cv-02418-DMR, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Failure to adequately plead these theories warrants dismissal of any TCPA claim in its entirety under Rule 12(b)(6), regardless of whether the plaintiff pled facts supporting other elements of the claim(s) asserted. *See, e.g., Nelums v. Mandu Wellness, LLC*, No. 2:22-828 KRS/GBW, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023). In this case, Plaintiff failed to plausibly allege either theory.

Courts in this district have applied these same TCPA liability principles to Washington state law telemarketing claims. *See Hollis v. eXp Realty LLC*, C25-0822JLR, 2025 WL 2711424, at *2–4 and n.3 (W.D. Wash. Sept. 23, 2025) (applying TCPA liability principles to Washington state law claims under the WTSA); *Hartman v. United Bank Card Inc.*, C11–1753JLR, 2012 WL 4758052, at *5–6, 7 n.6 (W.D. Wash. Oct. 4, 2012) (applying TCPA liability principles to Washington state law claims under WADADA and WCPA); *see also Wick v. Twilio Inc.*, No. C16-00914RSL, 2016 WL 6460316, at *3 n.2 (W.D. Wash. Nov. 1, 2016) (noting that TCPA and Washington's "substantially similar" schemes are interpreted the same way under 9th Circuit law). Thus, to adequately plead claims under Washington state law,


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Plaintiff was required to plausibly allege that Gerber Life either made the calls or that the callers acted as its agents. Again, her Complaint alleges neither.[2]

**1. Plaintiff Fails to Plausibly Allege a Direct Liability Theory**

It is axiomatic that that direct liability under the TCPA applies only to persons or entities that "make" or "initiate" calls—meaning they must "tak[e] the steps necessary to physically place" the call or send the text. *Sheski v. Shopify (USA) Inc.*, No. 19-cv-06858-HSG, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)); *accord Hamilton v. El-Moussa*, CV 19-08182-CJC(AFMx), 2020 WL 8993127, at *2–3 (C.D. Cal. Apr. 30, 2020) (dismissing under Rule 12(b)(6) and citing *Thomas*, *supra*). Courts routinely dismiss TCPA claims where plaintiffs fail to allege facts from which the court can plausibly infer that the defendant itself directly made the call. *See Metzler v. Pure Energy USA LLC*, 21-CV-9798 (VEC), 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (plaintiff must allege facts supporting a plausible inference of direct liability "even if it is also plausible that a third party made the call"); *Brownlee v. Allstate Ins. Co.*, No. 21-cv-1428, 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (plaintiff must allege facts allowing the court to "reasonably infer that defendant is [directly] liable for each call"). Courts in this Circuit have consistently reached the same conclusion. *See, e.g., Sheski*, *Hamilton*, *Pascal*, *Abante*; *see also Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129-YGR, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 WL 1790471, at *3 (N.D. Cal. Apr. 24, 2019).

---

[2] Plaintiff's WCPA claim is entirely derivative of her claims under WADADA and WTSA. *See Rinky Dink, Inc. v. Elec. Merch. Sys.*, 2014 WL 12103245, at *12-13 (W.D. Wash. Nov. 4, 2014) (noting that a plaintiff's "claim under the WCPA arises automatically from [a] WADAD claim"); *see also* RCW 80.36.390(12) (providing that a violation of the WTSA is "an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose" of the WCPA). Thus, because Plaintiff's WADADA and WTSA claims fail due to Plaintiff's failure to plead direct or vicarious liability for the calls alleged in the Complaint, Plaintiff's WCPA claim (Count 12) fails as a matter of law.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

This principle also means that an outbound call physically initiated by a third party—even if it allegedly promotes the defendant's products or is described as being made on the defendant's "behalf"—does not constitute direct TCPA liability as a matter of law. *See Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers, even if the third party had acted on its behalf") (internal quotation marks omitted); *Wick*, 2017 WL 2964855, at *3 (same). As the FCC has explained, direct liability requires a "direct connection between a person or entity and the making of a call." Rules & Reguls. Implementing the TCPA, 30 FCC Rcd. 7961, 7980 (2015) (internal quotation marks omitted). Thus, an indirect connection—such as a call physically placed by a third party and later transferred to the defendant—cannot support a plausible direct-liability theory.

Moreover, a plaintiff cannot survive dismissal by offering only bare legal conclusions or speculation that the defendant "made" or "initiated" the calls. *See Frank v. Cannabis & Glass, LLC*, No. 2:19-cv-00250-SAB, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). Courts repeatedly reject complaints that merely parrot statutory language without factual support. *See Woodard v. Health Ins. All.*, 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (TCPA plaintiffs must allege facts "distinguishable from the statutory language" to survive dismissal); *Bank v. Alleviate Tax, LLC*, 23-CV-5457 (PKC) (PK), 2024 WL 1332635, at *5 n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing pro se TCPA complaint; "simply asserting a purported fact does not make it one" absent supporting factual allegations).

In fact, federal courts across the country have widely recognized that even a call or text allegedly offering the defendant's products, identifying the defendant by name in some fashion, and/or purportedly originating "from" the defendant or someone associated with the defendant does not, standing alone, allow for a plausible inference of direct TCPA liability. *See, e.g., Bank*, *supra*; *Brown v. Nano Hearing Tech Opco, LLC*, 3:24-cv-00221-BTM-JLB, 2024 WL


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing where plaintiff concluded that the caller's "phone numbers belonged to [the defendant] Nano or Nano's agent" because "the callers promoted Nano Hearing Aids to her and because one of the calls was transferred to a phone number that connects to Nano"); *Barnes v. SunPower Corp.*, No. 22-cv-04299-TLT, 2023 WL 2592371, at *1, *3 (N.D. Cal. Mar. 16, 2023) (dismissing, even though one plaintiff allegedly spoke to someone "who identified herself as working for" the defendant, and the other plaintiff received a "call back number" for the defendant from the caller and received an email from defendant after the call); *Katz v. Caliber Home Loans, Inc.*, No. 3:23-CV-0145-S, 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Meeks*, 2018 WL 1524067, at *1–5 (no direct liability, even though a text identified defendant by name and contained a link to its website); *Murray v. Choice Energy, LLC*, No. 1:15–cv–60, 2015 WL 4204398, at *2, *4 (S.D. Ohio July 10, 2015) (dismissing, even though plaintiff was allegedly "informed that the call was from" defendant, where there were "no factual allegations in the complaint that [defendant] had any active role or involvement in [physically] placing the calls"). In short, the case law shows that the alleged content of the communication alone is not dispositive of direct TCPA liability.

Instead, for any TCPA plaintiff to avoid dismissal on direct liability grounds under Rule 12(b)(6), she must plead specific non-conclusory facts supporting a plausible inference that the defendant itself, not a third party, literally took the steps necessary to "physically" place the calls/texts directly to them. *See, e.g., Sheski*, 2020 WL 2474421, at *2–4. Simply taking an "either/or" pleading approach and concluding the defendant or its agent called or texted plaintiff is not enough. *See, e.g., Bank v. Philips Elecs. N. Am. Corp.*, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (allegations calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

claim" for direct liability); *Rogers v. Assurance IQ, LLC*, No. 2:21-cv-00823-TL, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (holding "[a] TCPA plaintiff must allege facts to support their belief that the defendant placed the calls at issue, such as 'how the caller identified itself, the substance of the calls,' or other details revealing that the defendant actually took steps to [physically] place the calls") (quoting *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)). But that is all Plaintiff's Complaint does here.

Applying these principles here, Plaintiff's allegations fall far short of plausibly pleading that Gerber Life directly "made" or "initiated" any of the calls at issue. The Complaint contains virtually no factual allegations supporting a viable direct-liability theory. Its core deficiency is simple: it pleads no facts suggesting that Gerber Life—rather than an unidentified third-party telemarketer—physically placed any of the calls, as federal law requires. Instead, Plaintiff merely asserts that Gerber Life did so, a conclusory allegation that cannot survive dismissal under the overwhelming weight of authority cited above.

Although Plaintiff claims in passing that some unspecified number of calls were placed "by Gerber Life," the Complaint contains no factual basis from which the Court could plausibly infer that Gerber Life directly initiated any call. Every one of the twenty calls identified in the Complaint was placed by a telemarketer using a rotating set of fictitious business names—"Senior Care," "Senior Benefit Solutions," "Senior Benefits," "American Benefits," "Senior Resource Center," "Final Expense Support Team," and "Senior Financial Solutions"—none of which is Gerber Life. Dkt. 11 ¶ 36. Plaintiff expressly acknowledges that neither the callers nor Gerber Life "are named" any of these entities. *Id.* ¶ 28. Not a single caller identified themselves as calling from Gerber Life. These allegations foreclose any plausible inference that Gerber Life directly initiated the calls.

Plaintiff's own allegations further confirm that the calls were physically placed by third-party telemarketers. She alleges that the callers used "fake monikers," that the calls were



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

"all from the same telemarketer," and that Does 1–10—unknown third parties—"acted as Gerber's agents in telephone soliciting consumers." *Id.* ¶¶ 14, 28–30. She also alleges that every calling number was spoofed and that calling those numbers back never reached Gerber Life or any agent. *Id.* ¶¶ 40–42. These facts are wholly inconsistent with any inference that Gerber Life itself placed the calls.

Plaintiff also alleges that each call began with a prerecorded message and was then transferred to a live agent who pitched Gerber Life products. *Id.* ¶¶ 31, 38–39. This call-transfer structure is fatal to her direct-liability theory. Courts consistently hold that a call physically initiated by a third party and later transferred to a defendant cannot support direct TCPA liability. *See, e.g., Brown*, 2024 WL 3367536, at *3; *Barnes*, 2023 WL 2592371, at *3.

Nor does Plaintiff allege any facts connecting Gerber Life to the phone numbers used to call her. She does not allege that Gerber Life's name appeared on her caller ID, that any caller identified themselves as a Gerber Life employee, or that calling the numbers back reached Gerber Life. To the contrary, she alleges the opposite: the numbers were spoofed, Gerber Life's name never appeared, and calling back never reached Gerber Life. *Id.* ¶¶ 40–42, 46–50. Courts routinely dismiss TCPA claims on this basis. See *Rogers*, 2023 WL 2646468, at *5; *Smith v. Direct Bldg. Supplies, LLC*, No. 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Doyle v. GoHealth, LLC*, No. 22-04291, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019); *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 (MKB), 2019 WL 2280731, at *2–3 (E.D.N.Y. Feb. 25, 2019), *report and recommendation adopted,* No. 18CV2555MKBRLM, 2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019).

The Complaint also contains directly contradictory allegations that further undermine any inference of direct liability. Plaintiff alleges that "Defendants" (Gerber Life and Does 1–10) "initiated" the calls, Dkt. 11 ¶ 66, yet simultaneously alleges that unknown third-party



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

telemarketers using fake names physically placed them. *Id.* ¶¶ 28–30, 33. She concedes that Does 1–10 are "unknown parties" who acted as telemarketers. *Id.* ¶ 14. She further alleges that the callers never identified from or for whom they were calling. *Id.* ¶ 46. Such internally inconsistent allegations cannot satisfy Rule 8 or the plausibility standard. *See Hernandez v. Select Portfolio, Inc.*, No. CV 15-01896 MMM AJWX, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015).

Finally, the fact that the callers ultimately pitched Gerber Life products does not establish direct liability. Courts uniformly hold that the content of a call—even if it promotes the defendant's products—does not establish that the defendant physically placed the call. *See Meeks*, 2018 WL 1524067, at *1–5; *Murray*, 2015 WL 4204398, at *2, *4; *Katz*, 2023 WL 5311488, at *3. That one caller said "I have a company for you with the name of Gerber Life Insurance Company," or that Plaintiff purchased Gerber Life policies through these callers, shows only that third-party telemarketers were selling Gerber Life products—not that Gerber Life initiated the calls. *See Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014); *Rogers*, 2023 WL 2646468, at *14–15.

In short, Plaintiff alleges no non-conclusory facts supporting an inference that Gerber Life physically placed any call at issue. Her direct-liability theory fails as a matter of law and should be dismissed.

**2. *Plaintiff Fails to Plausibly Allege a Vicarious Liability Theory***

To the extent Plaintiff attempts to assert a vicarious TCPA liability theory based on the conduct of unidentified third-party callers, that effort also fails. Federal courts apply traditional common-law agency principles to determine vicarious liability under the TCPA. *See Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018); *Rogers*, 2023 WL 2646468, at *15. Under those principles, a plaintiff must plead actual facts—not conclusions—showing a consensual principal-agent relationship and the principal's right to control the agent's conduct.


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

*See Restatement (Third) of Agency* § 1.01 cmt. c. Although a complaint need not detail every aspect of the relationship, it must allege enough facts to support a reasonable inference that an agency relationship existed. *Meeks*, 2018 WL 1524067, at *5. Mere "connections" between the defendant and the caller are insufficient. *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *3. Conclusory assertions of agency do not satisfy Rule 8. See *Naiman*, 2019 WL 1790471, at *4.

Critically, "under any standard for finding an agency relationship, the [principal] must have the right to substantially control its [agent's] activities." *Fabricant v. Elavon, Inc.*, 2:20-cv-02960-SVW-MAA, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020) (alterations in original) (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017)). For TCPA purposes, the plaintiff must allege facts showing that the defendant controlled the "manner and means" of the challenged calls. *Rogers*, 2023 WL 2646468, at *16.

Plaintiff alleges no such facts. She does not claim Gerber Life directed the callers, controlled their dialing practices, supervised their scripts, trained them, monitored them, or even knew who they were. Her allegations describe, at most, unknown telemarketers who occasionally referenced Gerber Life products. That is not enough to plead actual authority, apparent authority, or ratification under settled agency principles. Because Plaintiff fails to allege facts showing that Gerber Life exercised control over the "manner and means" of the alleged calls, her vicarious-liability theory fails as a matter of law and the Complaint should be dismissed.

*i.* <u>*Actual Authority*</u>

"An agent is one who 'act[s] on the principal's behalf and subject to the principal's control.'" *Abante*, 2018 WL 288055, at *11 (alteration in original) (quoting *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010)). "Agency means more than mere passive permission; it involves request, instruction, or command." *Id.* (quoting *Thomas*, 879 F. Supp. 2d at 1085);



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

*see also Pascal*, 2019 WL 5212961, at *3 ("For an agency relationship to exist, an agent must have authority to act on behalf of the principal and the principal must have the right to control the agent's actions."). Importantly, Plaintiff must establish not only the existence of an agency relationship in the abstract, but "must also establish actual authority to place the unlawful calls." *Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at *5 (N.D. Cal. Mar. 20, 2019) (quoting *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018)).

Here, Plaintiff alleges no facts to plausibly suggest Gerber Life requested, instructed, or commanded the callers to place the telemarketing calls she allegedly received. Rather, Plaintiff simply alleges that some of the telemarketers referred to Gerber Life during the telephone calls or offered Gerber Life products for sale to Plaintiff. Dkt. 11 ¶ 36. Such allegations are insufficient to establish the callers had actual authority to place the alleged telemarketing calls on Gerber Life's behalf. *See, e.g.*, *Salaiz v. eHealthInsurance Servs.*, 22-cv-04835-BLF, 2023 WL 2622138, at *8 (N.D. Cal. Mar. 22, 2023) (plaintiff failed to plead actual authority where the complaint contained no allegations regarding the relationship between the telemarketer and insurance company defendant or whether the defendant exercised control over the telemarketer); *Abante*, 2018 WL 288055, at *5 ("It is not enough that each representative identified him or herself as acting on behalf of [the defendant insurance company]. Such allegations say nothing about whether [the] defendant consented to those representations. And, more importantly, such allegations indicate nothing about the amount of control, if any, [the] defendant purportedly exercised over the representatives"); *Pascal*, 2019 WL 5212961, at *3 (complaint failed to plausibly allege actual authority where the plaintiff pled only that the telemarketers were hired to market the insurance company defendants' products and services and that the defendants "knowingly and actively accepted business that originated through the illegal telemarketing calls placed by [the telemarketers]"). These are precisely the types of defective conclusory allegations alleged in Plaintiff's Complaint. Plaintiff has alleged no facts



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

to plausibly suggest Gerber Life directed or controlled the callers identified in the Complaint. Accordingly, Plaintiff has failed to plausibly plead the callers had actual authority to make the telemarketing calls on behalf of Gerber Life.

*ii.* *Apparent Authority*

"Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *Abante*, 2018 WL 288055, at *5 (quoting *NLRB v. Dist. Council of Iron Workers*, 124 F.3d 1094, 1098 (9th Cir. 1997)). "It is not sufficient to allege that the purported agent claimed authority or purported to exercise it." *Id.* (internal quotation marks omitted).

Here, Plaintiff alleges *the callers* referred to Gerber Life, or offered Gerber Life products for sale, during four of the telephone calls at issue. Plaintiff alleges no other facts to plausibly suggest that *Gerber Life* "made any statement or took any action that would have led Plaintiff to believe [the callers] w[ere] acting as its agent." *See Jorge Valdez v. Nationwide Real Estate Execs., Inc.*, SA CV 20-01734-DOC-(JDEx), 2021 WL 2134159, at *4 (C.D. Cal. Apr. 22, 2021). District courts throughout the Ninth Circuit have found such allegations insufficient to establish apparent authority. *See Abante*, 2018 WL 288055, at *5–6 (no apparent authority where complaint alleged telemarketer promoted insurance products on the defendant's behalf, and telemarketer appeared as an insurance agent on the defendant's website); *Pascal*, 2019 WL 5212961, at *4 (no apparent authority where complaint alleged the defendant accepted business originated through telemarketing calls).

In *Rogers v. Assurance IQ, LLC*, a court in this District found a plaintiff failed to sufficiently plead apparent authority even where the plaintiff alleged the defendant instructed the caller "on who to call, provided the phone numbers to call, gave instructions to use pre-recorded voice messages, and approve[d] a pre-recorded script for those calls." 2023 WL


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

2646468, at *6 (W.D. Wash. Mar. 27, 2023). Plaintiff's allegations here are even more woefully deficient. The mere fact that Plaintiff was ultimately sold an insurance policy following two of the telephone calls at issue does not change the analysis. *Calhoun v. Nani Brand, Inc.*, No. 1:25-CV-51-DAE, 2025 U.S. Dist. LEXIS 251480, at *19 (W.D. Tex. Dec. 5, 2025) [3] (finding the plaintiff failed to plead vicarious liability for TCPA violations "even where the plaintiff alleged that the defendant's policies were sold following the calls"). At best, these allegations establish certain of the telemarketers "w[ere] authorized to sell [Gerber Life]'s product." *Doane v. Benefytt Techs., Inc.*, No. 22-10510-FDS, 2023 WL 3465628, at *10 (D. Mass. Mar. 10, 2023) (finding the mere fact a telemarketer was authorized to sell the defendant's product insufficient to establish the defendant "authorized any subsequent marketing calls").

Plaintiff's allegations are insufficient to establish vicarious liability for purposes of the TCPA or Washington state telemarketing laws. Accordingly, Plaintiff has failed to plausibly plead the callers had apparent authority to make the telemarketing calls on behalf of Gerber Life.

*iii.* <u>*Ratification*</u>

Ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018) (citing *Restatement (Third) of Agency* § 1.01(1)) "Even if a principal ratifies an agent's act, the principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Id.* (cleaned up). "In the context of the TCPA, ratification requires 'actual knowledge that [the agent] was [violating the TCPA]' or 'knowledge of facts that would have led a reasonable person to investigate whether [the agent]

[3] This case is not available on Westlaw. Accordingly, the Lexis citation is provided instead.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

was acting in compliance with the law.'" *Fabricant*, 2020 WL 11884505, at *6 (quoting *Kristensen*, 879 F.3d at 1014). Moreover, where "an actor is not an agent and does not purport to be one," the doctrine of ratification is inapplicable. *Kristensen*, 879 F.3d at 1014 (internal quotation marks omitted).

Just as Plaintiff failed to plead any non-conclusory allegations that would support a finding of apparent authority, so too has Plaintiff failed to plead that Gerber Life ratified the allegedly wrongful conduct of the callers identified in the Complaint. The only allegation in Plaintiff's Complaint that is conceivably relevant to the issue of ratification is Plaintiff's assertion that Gerber Life "generate[s] business with the[] same phone agents who pitched Gerber [Life] insurance to [Plaintiff] via illegal phone calls . . . ." Dkt. 11 ¶ 20. But nothing in the Complaint plausibly suggests that Gerber Life ratified the alleged callers' telemarketing conduct with full knowledge of the material facts surrounding those calls—i.e. with knowledge that the calls were made in violation of the TCPA or with knowledge that would lead a reasonable person to further investigate. *See Fabricant*, 2020 WL 11884505, at *6. Gerber Life's mere receipt of a benefit, i.e., policy premiums paid by Plaintiff, is insufficient. *See Salaiz*, 2023 WL 2622138, at *4 (finding allegation that a defendant insurer received the benefit of the plaintiff's business as an insured following a telemarketing call "insufficient to plead knowledge" for purposes of ratification).

And, even if Plaintiff had pled such facts (she did not), Plaintiff could not establish Gerber Life was "liable under a ratification theory because 'the principal-agent relationship is still a requisite and ratification can have no meaning without it.'" *Abante*, 2018 WL 288055 (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003). As discussed above, Plaintiff has pled no facts to suggest the telemarketers were agents (or purported to be agents) of Gerber Life. *See Kristensen*, 879 F.3d at 1014. Accordingly, Plaintiff failed to plausibly plead Gerber Life ratified the callers' purportedly unlawful telemarketing calls.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

### B. The TCPA's Do-Not-Call Provisions Apply Only to Residential Telephone Subscribers

Plaintiff separately fails to state a claim under Section 227(c) (Count 1) because that provision is limited to "redress of violations of the regulations that concern residential telephone subscribers." *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-cv-02921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018). "A cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023). As district courts have repeatedly found, "[c]ell phones do not present the same concerns as residential phones," as their "mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone." *Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). By contrast, "a residential phone is a home phone that is hard-wired into the building. It means a land-line. It is *residential* in a very literal sense." *Moore*, 2023 WL 8601528, at *2 (emphasis in original).

#### 1. The Plain Text of Section 227(c) Does Not Include Cell Phones

At the time the TCPA was enacted in 1991, the term "residential" meant being "adapted or restricted to or occupied by residences" or "of, relating to, or connected with residence or residences." *Residential*, Webster's Third New Int'l Dictionary of the English Language Unabridged (1993). Under the plain text chosen by Congress, therefore, a "residential telephone" is "a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere." *Shelton v. Fast Advance Funding, LLC*, 378 F.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) (quoting MERRIAM-WEBSTER). By limiting Section 227(c) to "residential" telephones (even while addressing cellular phones in other sections of the TCPA), Congress intended Section 227(c) to exclude cell phones; "[t]hat is the whole point of having written statutes; every statute's meaning is fixed at the time of enactment." *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024) (internal quotation omitted); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012) ("Legislation means today what it meant when enacted.").

Numerous other courts have reached the same result. *See Moore*, 2023 WL 8601528, at *3 (dismissing Plaintiff's claim under section 227(b)(1)(B), which only applied to residential phones); *Morris v. Lincare, Inc.*, No. 8:22-cv-02048, 2023 WL 5336780, at *4 (M.D. Fla. Aug. 18, 2023) ("It is worth noting that courts use 'home phone' and 'residential telephone' to refer to the TCPA's language 'residential telephone line.' While these terms are used by courts interchangeably, they are distinct from cell phones"); *Worley v. Mun. Collections of Am., Inc.*, No. 1:14-cv-02418, 2015 WL 890878, at *3 (N.D. Ill. Feb. 27, 2015) ("One provision of the TCPA prohibits certain calls to cell phones, see 47 U.S.C. § 227(b)(1)(A)(iii), and another provision prohibits certain calls to residential phone lines, see 47 U.S.C. § 227(b)(1)(B)"); *but see Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254, at *2 (E.D. Pa. Mar. 23, 2026) [4] (finding a "'residential subscriber' is not limited to a residential landline" and collecting cases).

[4] This case is not available on Westlaw. Accordingly, the Lexis citation is provided instead.


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

### 2. The TCPA's Structure Distinguishes Between Cell Phones and Residential Phones

The TCPA's structure further demonstrates Congress did not intend Section 227(c) to apply to cell phones. When courts interpret statutory text, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). Here, "the TCPA specifically mentions 'cellular telephone service' in § 227(b) and § 64.1200(a)(1)(iii), indicating that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Shelton*, 378 F. Supp. 3d at 362 n.7. This was no accident. Instead, Congress expressly considered the interests unique to cell phones when it enumerated "cellular" telephones in Section 227(b). *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 648 (2020) (Gorsuch, J., concurring in part) (explaining that Congress banned robocalls to cell phones "to address the problem" caused by "many cell phone users ha[ving] to pay for each call"). A co-sponsor of the TCPA also differentiated between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones." 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen). Had Congress intended for Section 227(c) to apply to cell phones, it could have done so. It did not, and "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *see Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

3580775, at *2 (W.D. Va. July 25, 2018) ("Congress used different language to discuss cell phones and residential lines, further demonstrating that they are not interchangeable.").

Indeed, when interpreting statutory text without a definition, courts should "construe statutes in the context of the entire statutory scheme and avoid rendering statutory provisions ambiguous, extraneous, or redundant . . . ." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (internal quotation omitted). Here, as discussed above, Congress distinguished "residential" devices and "cellular" devices in other sections of the TCPA, and distinguished text messages from telephone calls. *See, e.g.*, *Barr*, 591 U.S. at 617 n.3 (acknowledging the separate restrictions for cell phones and residential phones). Under every mode of statutory construction, these terms cannot be read as one and the same. By expressly confining Section 227(c) to "residential telephone subscribers," Congress made plain that only those consumers may invoke its protections. Plaintiff does not fall within this category, and as such, has no statutory footing on which to base her claim.

**C. There Is No Private Right of Action Under 47 C.F.R. § 64.1200(d)**

"The TCPA . . . does not create a private right of action for every violation of its provisions, but instead creates such a right only in specific circumstances." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 90 (D.D.C. 2006). Congress did not create a private right of action for individuals to bring suit for a defendant's alleged violation of technical regulations, like maintenance of an internal do-not-call list. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Private rights of action to enforce federal law must be created by Congress."). Plaintiff asserts three causes of action under 47 C.F.R. § 64.1200(d). *See* Dkt. 11, Counts 3-5.


**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

However, this regulation was promulgated under § 227(d) of the TCPA, for which there is no private right of action.

Because a plaintiff can only assert a claim where Congress has created a private right of action, this Court must first determine the statutory and/or regulatory predicate for Plaintiff's claims. For example, Section 227(b)(3) of the TCPA provides a private right of action for individuals to bring suit for violations of the TCPA's automatic telephone dialing systems and pre-recorded voice prohibitions. *See* 47 U.S.C. §227(b)(3)(A). Similarly, Section 227(c)(5) provides a private right of action for "regulations prescribed under *this* subsection" concerning telephone solicitations and the NDNCR. *Id.* at § 227(c)(5)(A) (emphasis added).

In contrast with subsections (b) and (c), Section 227(d) concerns "technical and procedural standards," including standards for maintenance of internal do-not-call lists and caller identification. *See id.* § 227(d); *see also Braver v. NorthStar Alarm Servs., LLC*, No. 5:17-cv-0383, 2019 WL 3208651, at *14-15 (W.D. Okla. July 16, 2019). Congress did not create a private right of action under Section 227(d), rather Congress granted the FCC the power to promulgate regulations creating these technical standards, which are to be enforced by the FCC rather than private individuals. *See* 47 C.F.R. § 64.1200(d). Indeed, the text of Section 227(d), read in contrast with 227(b) and (c) clearly establishes that Congress knew how to create a private right of action, yet chose not to provide one for Section 227(d) and regulations promulgated thereunder.[5] *See Holmes v. Back Drs., Ltd.*, 695 F. Supp. 2d 843, 854 (S.D. Ill.

---

[5] The Ninth Circuit has not addressed this issue. Federal courts in other jurisdictions, including the Eleventh Circuit have concluded § 64.1200(d) provides a private right of action. *See, e.g.*, *Cordoba v. DIRECTTV LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019). However, this Court is not bound by this out-of-jurisdiction precedent, and Gerber Life respectfully submits the authority cited herein, although the minority view, is more persuasive and should be adopted by this Court.



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

2010); *Kopff*, 425 F. Supp. 2d at 90–91 (finding no right of action under §227(d)); *Adler v. Vision Lab Telecomm., Inc.*, 393 F. Supp. 2d 35, 37–39 (D.D.C. 2005) (same).

Therefore, Plaintiff cannot use Section 227(c)(5)'s private right of action to recover for a violation of a regulation promulgated under subsection (d). *See Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 982 (D. Md. 2019) ("[T]he requirements of §64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA," rather than 47 U.S.C. § 227(c)) (quoting *Worsham v. Travel Options, Inc.*, No. 1:14-cv-02749, 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017)). Thus, this Court should dismiss Counts 3–5 of Plaintiff's Complaint because there is no private right of action under 47 C.F.R. § 64.1200(d).

**D. There Is No Private Right of Action Under 47 C.F.R. § 64.6101(e)**

Plaintiff's claim for violations of 47 C.F.R. § 64.1601(e) (Count 6) separately fails because this regulation does not create a private right of action. *See Meyer v. Cap. All. Grp.*, 15-CV-2405-WVG, 2017 WL 5138316, at *16 (S.D. Cal. Nov. 6, 2017). "[S]ection 64.1601(e) does not expressly convey a private right of action." *Id.* at *17. And "[a]ny violation of § 64.1601(e)(1) is a violation of technical and procedural standards under [47 U.S.C. 227(d)], and . . . no private right of action exists under the latter subsection of the TCPA." *Worsham*, 2016 WL 4592373, at *7. "Where a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is 'highly improbable' that Congress—or here, the FCC—'absent mindedly forgot to mention an intended private action.'" *Meyer*, 2017 WL 5138316, at *16 (quoting *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979)). District courts in the Ninth Circuit have thus concluded no private right of action exists for violations of §



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

64.1601(e). *See id.*; *Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, 6:24-cv-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024) (finding "persuasive the reasoning of every federal court to consider the issue" and no private right of action exists for alleged violations of 47 C.F.R. § 64.1601(e)). Thus, this Court should dismiss Count 6 of Plaintiff's Complaint.

**E. Plaintiff Fails to State a Claim Under RCW 80.36.390(10)**

Plaintiff's claim for purported violations of RCW 80.36.390(10) (Count 11) separately fails because the Complaint simply regurgitates the text of the statutory provision without providing any nonconclusory allegations to support her claim. RCW 80.36.390(10) provides, "[i]t is unlawful for a person to initiate, or cause to be initiated, a telephone solicitation that violates 47 U.S.C. Sec. 227(e)(1), as currently written or as subsequently amended or interpreted by the federal government. This subsection applies to all telephone solicitation intended to be received by telephone customers within the state." RCW 80.36.390(10). Plaintiff alleges that Gerber Life "initiated telephone solicitation to Plaintiff's telephone number while knowingly transmitting misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." Dkt. 11 ¶ 155. Plaintiff claims that she knows the caller identification numbers were "fake" because "she called the calling numbers back and did not reach Gerber [Life] or any of its agents." *Id.* ¶ 40. Even accepting this allegation as true, Plaintiff does not allege that Gerber Life itself placed any of the calls and therefore it makes perfect sense that she would not reach Gerber Life by calling back those numbers. At best, her allegation that she could not reach Gerber Life supports the conclusion that Gerber Life did not place the calls—not that Gerber Life was using "fake" numbers. And Plaintiff alleges no facts plausibly suggesting Gerber Life was aware of this "misleading or inaccurate caller identification information" or acted with an intent to "defraud, cause harm, or wrongfully obtain anything of value." *See Barton v. Real Innovation Inc.*, 792 F. Supp. 3d 1195, 1208 (W.D. Wash. July 17, 2025) (dismissing claim under RCW



**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

80.36.390(10) where the "[p]laintiff's complaint d[id] not identify any misleading or inaccurate identification information intended to defraud; it merely restate[d] the statute"). Because Plaintiff's Complaint fails to do anything more than restate the statutory language of RCW 80.36.390(10), Count 11 of her Complaint should be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Gerber Life respectfully requests this Court to grant its motion to dismiss Plaintiff's Complaint in its entirety.

DATED this 28th day of May, 2026.

CARNEY BADLEY SPELLMAN, P.S.

By */s/ Mark Rosencrantz*
Mark Rosencrantz, WSBA #26552
Attorneys for Defendants

-and-

KELLEY DRYE & WARREN LLP

*/s/ Ryan M. Dunn*
Lauri A. Mazzuchetti (*pro hac vice* forthcoming)
Ryan M. Dunn (*pro hac vice*)
7 Giralda Farms, Suite 340
Madison, NJ 07940
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

Damon W. Suden (*pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 1007
Telephone: (212) 808-7800
Facsimile: (212) 828-7897

I certify that this memorandum contains 8,070 words in compliance with the Local Civil Rules

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of May, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiff**
Peter Schneider
Northwest Debt Resolution LLC
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
P: (206) 800-6000
F: (206) 800-6015
peter@nwdebtresolution.com

DATED this 28th day of May, 2026.

*/s/ Allie M. Keihn*
Allie M. Keihn, Legal Assistant