HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| REBECCA HIGDON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GERBER LIFE INSURANCE COMPANY, and DOES 1-10,<br><br>Defendants. | NO. 3:26-cv-05316-JHC<br><br>PLAINTIFF'S RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS<br><br>NOTE FOR MOTION: 5/25/26 |

## I. INTRODUCTION

For as long as she can remember, Rebecca Higdon has been harassed by telemarketers pitching goods and services she doesn't need or want. Amongst the most invasive and unsettling for her are telemarketing calls peddling final expense insurance.

Ms. Higdon has told these telemarketers she doesn't want or need their services or products and repeatedly demanded they stop calling. All to no avail. Frustrated, she tried an entirely different approach; identifying which company these telemarketers were calling on behalf of and shutting them down at the source.

To accomplish this, during an illegal telemarketing solicitation call on 12/11/25, after Gerber's agent quoted terms and prices for a Gerber final expense policy, Ms. Higdon



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

purchased a policy (#90632341) from Gerber, then promptly used a reasonable means to demand Gerber put an end to the illegal and unwanted telemarketing campaign it was waging against her. Dkt. 11 ¶ 36.

That same day, Ms. Higdon used a reasonable means to tell Gerber that she only "purchased" the policy so she could identify Gerber, thus allowing her to demand Gerber stop the illegal telemarketing calls being made to her. Ms. Higdon advised Gerber she did not want the policy and asked that Gerber not take her money. *Id.* ¶ *36*.

On 12/15/25, Ms. Higdon would again use a reasonable means to demand Gerber put an end to the illegal telemarketing calls being made to her. Approximately three weeks after the 12/11/25 telemarketing call, Gerber would withdraw a premium payment for Gerber policy #90632341 from her bank account. *Id.* ¶ *36*.

This seemed to only embolden Gerber and its agents, as their campaign of telemarketing harassment against Ms. Higdon continued, with no fewer than twelve (12) telemarketing calls being placed to her on behalf of Gerber, by its agents, between 12/12/25 and 3/4/26. *Id.* ¶ *36.*

On 2/2/26, Gerber's agents sold Ms. Higdon yet another Gerber final expense insurance policy (#90669598) during an illegal telemarketing call. As was the case previously, Ms. Higdon only "purchased" the policy to identify who the telemarketers were working for and on behalf of. On 2/4/26, Ms. Higdon would again use a reasonable means to tell Gerber that she only "purchased" the (second) policy so she could identify Gerber and demand Gerber stop the illegal telemarketing calls being made to her. *Id.* ¶ *36*.

The Plaintiff's 1st Amended Complaint clearly identifies and articulates the illegal telemarketing operation run by Gerber vis-à-visits agents. That operation robocalled Ms. Higdon's do-not-call-registered residential phone line at least twenty times using spoofed caller IDs and a rotating set of fake business names. *Id.* ¶¶ 24–54.



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

Gerber's agents used Gerber's name, peddled Gerber's products, quoted Gerber policy terms and rates ("a $10,000 Gerber life insurance policy for $59 a month,") and twice initiated the sale of actual Gerber policies (#90632341 & #90669598). Dkt. 11 ¶ 36.

Ms. Higdon told Gerber directly, on three (3) separate occasions, that its insurance was being sold to her through illegal telemarketing calls and to cease the illegal activity. Ms. Higdon told Gerber's agents, on no fewer than nine (9) occasions, to stop calling her. *Id*. ¶ 36. That means Ms. Higdon made no fewer than twelve (12) demands for Gerber to stop its illegal telemarketing campaign against her. Instead of honoring her demands, Gerber withdrew a premium payment from Ms. Higdon's bank account, investigated nothing, and continued its relentless telemarketing campaign against her.

## II. ARGUMENTS & AUTHORITY

### Legal standard on a motion to dismiss

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted).



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014).

**Gerber is vicariously liable for the illegal telemarketing of its agents**

The Telephone Consumer Protection Act ("TCPA") prohibits making telemarketing calls to residential telephone subscribers who have registered their telephone numbers on the federal do not call ("DNC") registry. 47 U.S.C. § 227(c). Persons who have registered their numbers on the DNC registry and receive more than one telemarketing call in a 12-month period, "by or on behalf of the same entity" have a private right of action. 47 U.S.C. § 227(c)(5).

For a call to fall under the TCPA, the caller must either (1) directly make the call, or (2) have an agency relationship with the person or entity that made the call. *See Thomas v. Taco Bell Corp*., 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("There are two potential theories of liability [for a TCPA violation]: (1) direct liability; and (2) vicarious liability.").

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 878 (9th Cir. 2014), *aff'd sub nom. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016).

Vicarious liability must be based upon at least one of the following theories: (1) apparent authority, (2) actual authority, or (3) ratification. *Jones v. Royal Administration Servs., Inc*., 887 F.3d 443, 449 (9th Cir. 2018). A plaintiff need not separately plead a particular theory of vicarious TCPA liability to proceed on that theory. *Cf. McCurley v. Royal Seas Cruises, Inc*., No. 21-55099, 2022 WL 1012471, at *1 (9th Cir. April 5, 2022) (concluding that plaintiffs did not waive an apparent authority theory of vicarious TCPA liability and observing that "plaintiffs



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

did not waive their vicarious liability arguments based on a failure to specifically allege them in the consolidated complaint").

**I. Ratification**

Who else but an authorized Gerber agent can quote Gerber insurance policy terms and prices, then cause to be issued (by Gerber) Gerber insurance policies, complete with their own unique policy numbers?

The Plaintiff's 1st Amended Complaint alleges that Ms. Higdon received multiple illegal telemarketing calls from Gerber agents and that she subsequently purchased Gerber insurance policies from those agents.

Gerber ratified the actions of its agent on 12/11/25 when it issued Gerber policy (#90632341) and withdrew funds for said policy from Ms. Higdon's bank account a few weeks later. Remarkably, Gerber did this again on 2/2/26. On that day, one of Gerber's telemarking agents called Ms. Higdon, peddled a Gerber insurance policy, and sold her another Gerber policy (#90669598). This occurred almost two months after Ms. Higdon used reasonable means on 12/11/25 and 12/15/25 to demand Gerber stop its illegal telemarketing campaign against her.

In *Henderson v. United Student Aid Funds, Inc*, the Ninth Circuit dealt with a TCPA case in which a Plaintiff alleged the original creditor student loan lender was a principal of and thus vicariously liable for the actions of five 3rd party debt collectors. The original creditor (USA Funds) hired a loan servicer (Navient) to service its student loan portfolio. Navient in turn contracted with five collection agencies to collect on delinquent student loan accounts. The Plaintiff pleaded vicarious liability on USA Funds for TCPA violations by the five collectors, even though the record established USA Funds had no contract with the five collection agencies.

USA Funds moved for summary judgment on the issue, and the court did an extensive analysis of vicarious liability of a principal based on ratification, ultimately adopting many positions of the Restatement (Third) of Agency, holding:



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

> "There are two ways to ratify a third party's acts. The first is by a "knowing acceptance of the benefit." To prove this form of ratification, there must be "an objectively or externally observable indication . . . that the principal has exercised choice and has consented" to the acts of the purported agent. Restatement § 4.01 cmt. d. That means that the principal must have "knowledge of material facts," also described as "actual knowledge." Restatement § 4.06. The second way a principal can ratify the acts of a third party is through "willful ignorance." Under the "willful ignorance" theory, the principal may not know the material facts, but has "ratified with awareness that such knowledge was lacking." Restatement § 4.01 cmt. b. In effect, the principal can ratify the act of a third party—thereby making the third party the principal's agent—even if it does not know all the material facts, but it must be aware that it does not know the material facts and ratify anyway."

*Henderson v. United Student Aid Funds, Inc*., 918 F.3d 1068, 1073-1074 (9th Cir. 2019).

The court went onto overturn the district court's order granting summary judgment on the issue, holding:

> "USA Funds argues it could not have ratified the actions of the debt collectors because there is no agency relationship between it and the debt collectors. We disagree. Restatement § 4.01 cmt. b makes clear that, in most jurisdictions, ratification may create an agency relationship when none existed before if the acts are "done by an actor . . . who is not an agent but pretends to be."

*Id.* at 1074.

In its motion to dismiss, Gerber cites *Kristensen v. Credit Payment Servs. Inc* and rewrites its holding (via bracketing):

> with awareness that such knowledge was lacking." *Id.* (cleaned up). "In the context of the TCPA, ratification requires 'actual knowledge that [the agent] was [violating the TCPA]' or 'knowledge of facts that would have led a reasonable person to investigate whether [the agent]

Dkt. 19 at 17.

However, *Kristensen* certainly didn't hold that a party needs actual notice of its agents TCPA violations to be vicariously liable for those actions. *Henderson* even referenced *Kristensen*, remarking:

> "Unlike the texting publisher in *Kristensen*, here, a reasonable jury could find that the debt collectors pretended and demonstrably assumed to act as USA Funds'



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

agents. *See* Restatement § 4.01 cmt b. As previously described, the debt collectors collected on unpaid loans by calling the student-borrowers. The collectors told the borrowers that they were calling about a loan owned by USA Funds. Without needing USA Funds' approval, the collectors negotiated, deferred, and took payments on USA Funds' behalf. In *Kristensen*, the texting publisher did not pretend to be the lenders' agent because the publisher did not identify itself in the text message."

*Henderson,* 918 F.3d at 1074.

Like the 3rd party debt collectors in *Henderson*, Gerber's agents identified themselves as agents of Gerber ("Sam from Senior Financial Solutions called offering a $10,000 Gerber life insurance policy for $59 a month"), offering Gerber policies they could sell to Ms. Higdon, quoted prices, negotiated terms, and sold Ms. Higdon a final expense insurance policy from Gerber (#90632341). Like *Henderson*, a reasonable jury could find that the agents that sold Ms. Higdon the Gerber policies, "pretended and demonstrably assumed to act as [Gerber's] agents."

Unlike *Henderson*, Gerber's agents didn't collect payment for it. Instead, Gerber took money directly from Ms. Higdon's account three weeks after the first Gerber policy (#90632341) was sold. This same scenario would repeat itself two months later. Far from being a distinguishing fact, this fact tilts the bar further in favor of a reasonable juror finding ratification of its selling agents' actions by Gerber.

Gerber had to know about the facts surrounding the issuance of both policies, as it was the entity that issued them. Insurance policies don't issue themselves, and it's not an impermissible leap to infer that Gerber gave the agents that contacted Ms. Higdon on 12/11/25 and 2/2/26 access to whatever system it has in place to generate quotes, terms, and ultimately commence the policy issuance process.

Gerber had to know that its telemarketing agents used aggressive and illegal telemarking tactics because Ms. Higdon told Gerber so on no fewer than three (3) occasions. Gerber ratified the actions of its aggressive telemarketing agents by issuance of the Gerber policies, particularly



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

policy #90669598 that was issued on 2/2/26, two months after Ms. Higdon explicitly told Gerber to cease its illegal telemarketing campaign against her.

These were the “objectively or externally observable indication . . . that the principal has exercised choice and has consented” to the actions of its agents that the restatement and *Henderson* speak of. Gerber had to have “knowledge of material facts," also described as "actual knowledge" of the facts as it issued both insurance policies. It’s collection of payment on those policies was the “knowing acceptance of the benefit" *Henderson* also speaks of. As was their failure to put a stop to the illegal telemarketing campaign. For Gerber, the payment of premiums derived from the illegal telemarketing campaigns was just too lucrative to put a stop to it.

Even if this Court were to assume, arguendo, that Gerber had no preexisting relationship with its telemarketing agents that sold Ms. Higdon the two policies, *Henderson* shows us that such agency can still arise under the “willful ignorance” theory, a principal may not know the material facts (of the agent’s actions), but may none the less ratify the actions of a 3rd party by ratifying the 3rd parties’ conduct, despite lacking awareness of the underlying facts.

The *Henderson* holding was recently affirmed by this Court in *Barton v. Am. Family Life Assurance Co. of Columbus.* In *Barton,* Nathen Barton sued an insurance company alleging TCPA violations by its agents.

In an uncanny parallel, *Barton* also dealt with agents of an insurance company telemarketing final expense insurance to a consumer who had registered his phone number on the national DNC registry.

Like the Plaintiff in this matter, Mr. Barton, trying to figure out who was behind the illegal telemarketing calls, purchased policies from the telemarketer. Like the Plaintiff in this matter, Mr. Barton repeatedly used reasonable means to demand the issuer of those policies stop



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

telemarketing to him. Like the Plaintiff in this matter, Mr. Barton also repeatedly told the insurance company's agents to stop calling.

Like the Plaintiff has alleged in this matter,  Mr. Barton alleged that the insurance company gave their agents access to their name to generate sales and access to their computer system for pricing and issuing policies. Like the Plaintiff has alleged in this matter, Mr. Barton alleged that the telemarketers would hide their phone number with "spoofed" numbers.

Like in this matter, the insurance company Defendant in *Barton* moved to dismiss, alleging that the Plaintiff had failed to adequately allege facts supporting his argument of vicarious liability for the agents' actions.

On 1/22/26 this Court ruled:

> "The Court finds that Mr. Barton has sufficiently alleged vicarious liability between Aflac and the telemarketers to survive a motion to dismiss pursuant to Rule 12(b)(6). At the pleadings stage Mr. Barton is not required to develop all the facts surrounding the agency relationship, nor is he required to plead a particular vicarious liability theory to proceed on that theory."
>
> *Barton v. Am. Family Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 LX 75171, at 10 (W.D. Wash. Jan. 22, 2026).
>
> Specifically (in terms of ratification) this Court ruled:
>
> "Mr. Barton also alleges that he contacted counsel for Aflac to stop the unwanted calls on March 4, 2025, counsel informed Aflac, and he received another call selling Aflac products on June 16, 2025. Dkt. 1-2 ¶¶ 236-39, 246. This supports a theory of ratification as it is "conduct that justifies a reasonable assumption that [Aflac] consents" to the telemarketer's conduct.
>
> *Barton,* LX 75171 at 10.

Like Mr. Barton, Ms. Higdon used reasonable means to communicate her demands directly to Gerber that it cease its illegal telemarketing campaign against her. In fact, she did so on three (3) separate occasions. As was the case with Mr. Barton, Gerber ended up selling the



NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

Plaintiff a second policy. This despite nearly two months having elapsed since the Plaintiff made two separate demands to Gerber that it cease trying to sell her products.

As such, the Defendant's motion to dismiss on the issue of vicarious liability should be denied. The Plaintiff's 1st Amended Complaint adequately alleges ratification and draws a litany of parallels to a case that survived a motion to dismiss in this Court just five months ago.

**II. Apparent Authority**

In the interest of brevity, the Plaintiff incorporates by reference all the arguments made in the preceding section dealing with ratification. Apparent authority allows liability to attach to a principal based on manifestations of a third party. In that respect, apparent authority is, arguably, the easiest mechanism by which vicarious liability can attach to a principal.

Apparent authority exists, "when a third party reasonably believes the [agent] has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099, 2022 U.S. App. LEXIS 9079, 2022 WL 1012471, at *2 (9th Cir. Apr. 5, 2022).

The Plaintiff's 1st Amended Complaint alleges the following:

1. Gerber's agent named Gerber and its products, quoted terms and prices, and sold a Gerber policy to the Plaintiff on 12/11/25.

2. Gerber's agent named Gerber and its products in an illegal telemarketing call to the Plaintiff on 1/8/26.

3. Gerber's agent named Gerber and its products, quoted terms and prices, and sold a Gerber policy to the Plaintiff on 2/2/26.

4. Gerber's agent named Gerber and its products in an illegal telemarketing call to the Plaintiff on 3/4/26.

Dkt. 11 ¶ 36.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

Naming the entity of the products it is peddling (Gerber), quoting terms and prices of those (Gerber) products, and ultimately selling a Gerber policy certainly establishes that Ms. Higdon had reasonable belief that the agents who called her were acting on behalf of Gerber.

In *Barton*, this Court ruled:

> "Mr. Barton alleges that Aflac gave the telemarketers "access to their computer systems for pricing and uploading customers [and] permission to use their business names," and continued "to do business with [t]he [t]elemarketers even as they received complaints of unwanted telemarketing." Dkt. 1-2 ¶ 67. He also alleges that the telemarketer sold him an actual Aflac policy, and he got the telemarketer's information from Aflac. *Id.* ¶¶ 231-32. This supports a theory of apparent authority, as one could reasonably believe that the telemarketers had the authority to act on behalf of Aflac."

*Barton,* LX 75171 at 10.

The Plaintiff has made identical allegations in her 1st Amended Complaint against Gerber. As such, the Defendant's motion to dismiss on the issue of vicarious liability should be denied on the basis of Gerber's apparent authority.

**The Plaintiff's claims arising under 47 U.S.C. § 227(c) are for telemarking calls made to her residential phone line.**

In her 1st Amended Complaint, the Plaintiff pleaded that she registered her phone number  on the national do-not-call registry at least 30 days prior to the phone calls at issue in this lawsuit and that she uses her phone number as a residential phone line and for personal use as one would use a landline. Dkt. 11 ¶¶ 19-22

Phone numbers registered on the national do-not-call registry are presumed to be residential in the Ninth Circuit. *Chennette v. Porch.Com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). To the extent Gerber brings up the *Loper Bright* decision in its Reply brief, *Loper Bright* changes nothing. *Chennette* is binding Ninth Circuit precedent unless SCOTUS overturns it.

In addition to *Chenette* specifically dealing with a  Plaintiff's cell phone, district courts in the Ninth Circuit have interpreted the plain language of the TCPA to explicitly apply to cellular phones. *Iniguez v. CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013). See also


NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

*Izor v. Abacus Data Sys.*, No. 19-cv-01057-HSG, 2019 LX 49303 at *4 (N.D. Cal. Aug. 5, 2019).

It is also well settled in the Ninth Circuit that cell phones can be residential phone lines for the purposes of recovering damages under the TCPA. *Hall v. Smosh Dot Com, Inc.,* 72 F.4th 983, 986 (9th Cir. 2023) ("As Hall alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA, she has stated an injury in fact sufficient to satisfy Article III.").

As recently as January of 2026, the Ninth Circuit reaffirmed its 2009 holding in *Satterfield v. Simon & Schuster, Inc.,* that text messages constitute a "call" under and are actionable under the TCPA. *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123 (9th Cir. 2026). This presupposes the inclusion of cell phones under the TCPA in the Ninth Circuit. Landline rotary phones can't receive text messages after all. The TCPA, like technology itself, has evolved. Because of this, the Defendant's motion to dismiss Plaintiff's Count 1 should be denied.

**Counts 3–5 are privately enforceable as 47 C.F.R. § 64.1200(d) was promulgated pursuant to § 227(c).**

Gerber argues that the Plaintiff's counts 3 through 5 (no internal do-not-call procedures, refusal to identify, and ignored do-not-call requests) fail because 47 C.F.R. § 64.1200(d) was supposedly promulgated under § 227(d), which has no private right of action. Gerber concedes this is "the minority view." Dkt. 19 at 23 n.5.

It's more than a "minority view." Every court of appeals to decide the question has rejected that position. Section 227(c)(5) creates a private right of action for violations, "of the regulations prescribed under this subsection," so the question is which subsection § 64.1200(d) implements. Subsection (c) is captioned "Protection of subscriber privacy rights" and directs the FCC to adopt regulations, "to protect residential telephone subscribers' privacy rights to avoid



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Consumers can enforce these regulations through a private right of action. 47 U.S.C. § 227(c)(5).

That is what 47 C.F.R. § 64.1200(d) does. It requires telemarketers to maintain company-specific do-not-call procedures, honor do-not-call requests, identify themselves and the person on whose behalf the call is made, and train their personnel.

This Court has discretion to determine if the Plaintiff's claims under 47 C.F.R. § 64.1200(d) allow for a private right of action. Plaintiff respectfully encourages this Court to follow the lead of the Sixth and Eleventh Circuit Court of Appeals and rule that § 64.1200(d) provides for a private right of action. See *Charvat v. GVN Mich., Inc*., 561 F.3d 623, 629 (6th Cir. 2009); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019).

**<u>Count 6 is privately enforceable as 47 C.F.R. § 64.1601(e) was promulgated pursuant to § 227(c).</u>**

Gerber's challenge to Count 6 rests on the same misclassification as its previous arguments. Section 64.1601(e) requires any entity engaged in telemarketing to transmit caller ID information, including a telephone number that "must permit any individual to make a do-not-call request during regular business hours." 47 C.F.R. § 64.1601(e)(1).

Though no binding Ninth Circuit legal precedent exists on the issue, this Court has previously ruled that § 64.1601(e) claims have a private right of action under the TCPA. See *Barton v. Bright Solar Mktg. LLC,* 2025 U.S. Dist. LEXIS 200521, 2025 WL 2880136, at *6 (W.D. Wash. Oct. 9, 2025); *Barton v. Am. Family Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 LX 75171 (W.D. Wash. Jan. 22, 2026). Plaintiff respectfully encourages this Court to follow its previous rulings finding a private right of action for claims under § 64.1601(e).



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

**RCW 80.36.390(10) explicitly includes vicarious liability for principals based on the actions of their agents.**

A Plaintiff need not alleged that a principal, such as Gerber, directly placed a call in violation of RCW 80.36.390(10) for that principal to be found in violation of it. The statutory text specifically states:

> "It is unlawful for a person to initiate, ***or cause to be initiated***, a telephone solicitation that violates 47 U.S.C. Sec. 227(e)(1), as currently written or as subsequently amended or interpreted by the federal government. This subsection applies to all telephone solicitation intended to be received by telephone customers within the state."

RCW 80.36.390(10) ***emphasis added.***

Like the section of the TCPA the statute is predicated on, it too allows for the illegal actions of telemarketing agents to bind the principal via vicarious liability. The Plaintiff pleaded that the Defendants (principal and agents) initiated a telephone solicitation to the Plaintiff. Dkt. 11 ¶ 155. The Plaintiff also pleaded that the Defendants harmed her by invading her privacy and harassing her, in addition to "re-alleging[ing] the previous paragraphs supra." . Id. ¶¶ 154-156. At the end of the day, Gerber's campaign of telemarketing harassment against Ms. Higdon is what ultimately caused the calls to be initiated.

As this Court ruled in *Barton v. Am. Family Life Assurance Co. of Columbus*, at the pleading stage a Plaintiff, "is not required to develop all the facts surrounding the agency relationship." *Barton,* LX 75171 at 10.

## III. CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests this Court deny Gerber's motion to dismiss in its entirety. Should this Court rule to grant Gerber's motion, in part or in whole, the Plaintiff respectfully requests this Court grant her leave to amend her 1st Amended Complaint.



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015

DATED June 18, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider

Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015

DECLARATION OF COMPLIANCE

The Plaintiff certifies this Response contains 4,444 words in compliance with LCR 7(e)(4).

DATED June 18, 2026

NORTHWEST DEBT RESOLUTION, LLC

/s/ Peter Schneider

Peter Schneider, WSBA# 43131
Attorney for Plaintiff
10900 NE 4th Street, Ste. 2300
Bellevue, WA 98004
PH: 206-800-6000
FX: 206-800-6015

## DECLARATION OF SERVICE

I, Peter Schneider, am a resident of the State of Washington, over the age of 18 and competent to make this declaration herein. On the date indicated below, I served the foregoing document to the following recipients in the manner described below:

**Ryan M Dunn**
rdunn@kelleydrye.com

**Damon W. Suden**
dsuden@kelleydrye.com

**Mark Rosencrantz**
rosencrantz@carneylaw.com

- ☐ USPS first class mail
- ☐ E-mail
- ☐ Facsimile
- ☒ Other – ECF e-service

DATED June 18, 2026.

/s/ Peter Schneider
Peter Schneider



NWDR
NORTHWEST DEBT RESOLUTION
10900 4th STREET, STE. 2300
BELLEVUE, WA 98004
PH: 206-800-6000
FX: 206-800-6015